**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

                     **Plaintiff,**

v.

JACOBO HOLGUIN-VALDEZ (01),

                     **Defendant.**

Case No. 25-20078-01-DDC

<u>**MEMORANDUM AND ORDER**</u>

A grand jury has charged defendant Jacobo Holguin-Valdez with distributing methamphetamine. The government moved to detain Mr. Holguin Valdez as he awaits trial, but the United States Magistrate Judge denied the government's request and ordered Mr. Holguin-Valdez released pretrial. The government has appealed that release order, arguing that no conditions of release can assure the community's safety, nor assure that Mr. Holguin-Valdez will appear in court.

The court disagrees with the government's community-safety argument. But the court agrees. He presents a risk of flight, and no conditions of release can guarantee his appearance. The court thus orders Mr. Holguin-Valdez detained pretrial. The court explains this decision, below.

## I.      Findings of Fact and Procedural Background

The government alleges that law enforcement utilized a confidential informant to conduct four controlled buys of methamphetamine from Mr. Holguin-Valdez in 2024. Doc. 11 at 4–5. The government also alleges that, in August 2024, a confidential source notified investigators

about a call from Mr. Holguin-Valdez, in which the two coordinated a fifth methamphetamine purchase. *Id.* at 5. On the day this fifth purchase was scheduled, police stopped Mr. Holguin-Valdez's car. *Id.* He gave someone else's name to the officers. *Id.* at 6. And, as he exited the vehicle, Mr. Holguin-Valdez threw an object (which turned out to be cocaine) in the ditch. *Id.* A search of the vehicle turned up three bags of methamphetamine weighing more than two kilograms. *Id.* The Pretrial Services Report suggests that Mr. Holguin-Valdez uses cocaine regularly. Doc. 12 at 3.

In September 2025, a grand jury indicted Mr. Holguin-Valdez on five counts: four counts of distribution of methamphetamine on four separate occasions, and one count of possession with intent to distribute methamphetamine. Doc. 1. A magistrate judge conducted a detention hearing on November 24, 2025. Doc. 8. Neither the government nor Mr. Holguin-Valdez presented evidence. Doc. 10 at 21. Though the magistrate judge termed the decision a close call, she ordered defendant released on conditions. *See* Doc. 9; Doc. 10. The United States filed its review motion two days later, and the court promptly scheduled a hearing for December 9, 2025.

This review hearing went off as scheduled, with Mr. Holguin-Valdez and counsel of record appearing. Both parties presented evidence. The government's evidence included testimony by one of the two Deputy United States Marshals who had arrested defendant on the current Indictment, Deputy Marshal Jacob Dent. Mr. Dent testified that he and the other Deputy Marshal traveled to Mr. Holguin-Valdez's residence to execute the arrest warrant. There, they found the defendant outside his house, blowing leaves in the street near his front yard. Mr. Dent testified that he stopped his truck and stepped out of it. He explained that he chose not to unholster his weapon before approaching the defendant because he was confident the defendant

2

wasn't armed.  Mr. Dent also explained, however, that he had donned his official issue bulletproof-vest.  Both sides of this vest identified Mr. Dent with the words "U.S. Marshal."  The front side of this vest also included a placard identifying him with the word "Police."  Mr. Dent approached the defendant and raised his hand to get his attention.  Mr. Dent testified that he had planned to introduce himself to the defendant, explain why the two Deputy Marshals were there, and then take Mr. Holguin-Valdez into custody.  Mr. Dent testified that the defendant looked directly at him, "clearly see[ing] that I'm the police."  And then, Mr. Holguin-Valdez immediately took "off running from us."  Mr. Dent's testimony clarified that the defendant was running away from his house, not toward it.

The two deputies chased Mr. Holguin-Valdez.  The chase lasted long enough for Mr. Dent to shout one or two times at the defendant, telling him to get on the ground.  The other Deputy Marshal also yelled at the defendant, commanding him to get on the ground.  All in all, the chase lasted about 50 yards ending only when one of the Deputy Marshals caught up to and tackled defendant to the ground.  Even then, Mr. Holguin-Valdez didn't immediately present his arms for handcuffing.  Nevertheless, the two Deputy Marshals applied the handcuffs with "minimal effort" even though they had "to muscle" one of defendant's arm out from underneath his body so they could place him in the handcuffs.

The government presented other limited evidence, as did Mr. Holguin-Valdez.  Also, counsel for both parties made proffers and argued their positions.  The government had supplied written argument before this December 9 hearing, but defendant hadn't.  Near the end of the hearing, the court inquired whether defense counsel wished to make a written submission arguing the decision.  After the hearing, Mr. Holguin-Valdez's counsel informally advised the

court that they intended to provide a written submission.  On December 16, 2025, defendant filed his response (Doc. 16).

In making its decision, the court has considered the evidence presented at the hearing, the parties' arguments, and the parties' papers.  The court also listened to the audio record made of the original detention hearing before the magistrate judge.  And the court takes judicial notice of the Pretrial Service Report (Doc. 12) prepared in the case.  This Order explains the court's decision, starting with the legal standard governing pretrial detention, next.

## II.    Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act, 18 U.S.C. §§ 3141–3156, provides one exception.  Under the Act, the court may detain someone pretrial

> if the defendant has been charged with certain enumerated offenses or "in a case that involves a serious risk that such person will flee; or a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

*United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (ellipses omitted) (quoting 18 U.S.C. § 3142(f)).  If the court agrees with the government that the defendant presents such a risk, then the government must show "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e).  "The government must prove risk of flight by a preponderance of the evidence[.]"  *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

Congress has specified four factors courts must use to determine whether any conditions of release will assure the appearance of a defendant:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

4

terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person . . . ; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Bail Reform Act also provides that certain offenses trigger a presumption that no conditions can assure the appearance of the defendant and the community's safety. *Id.* § 3142(e)(3)(A). As relevant here, that presumption is triggered by "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[.]" *Id.* The court starts its analysis with this presumption, below. But, first, it must address the standard of review governing this decision.

## III.    Analysis

The government has asked the court to review the magistrate judge's detention decision under 18 U.S.C. § 3145(a)(1). "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." *Cisneros*, 328 F.3d at 616 n.1. The court begins its de novo review with the presumption of detention. Next, the court considers the government's argument that the court should order Mr. Holguin-Valdez detained pretrial because he presents a danger to the community. The court then analyzes whether Mr. Holguin-Valdez presents a risk of flight and, concluding that he does, considers whether any conditions of release reasonably can assure his appearance.

### A.    The Presumption

As hinted above, the presumption found in § 3142(e)(3)(A)—presuming no conditions of release will guarantee a defendant's appearance or the community's safety if the defendant is

charged with Controlled Substances Act charges that carry a maximum prison term of 10 or

more years—applies here.  A grand jury in this district voted to indict Mr. Holguin-Valdez on

five Controlled Substance Act charges.  Count one carries a maximum prison term of 20 years,

and counts two through five carry a maximum prison term of 10 years.  Doc. 1 at 6 (first citing

21 U.S.C. § 841(b)(1)(C), and then citing 21 U.S.C. § 841(b)(1)(A)).  The court thus

concludes—and the parties agree—that the presumption applies here.

What does this presumption mean?  It's rebuttable.  *United States v. Stricklin*, 932 F.2d

1353, 1354–55 (10th Cir. 1991).  So, a defendant can overcome the presumption, and he can do

so by presenting "some evidence."  *Id.* at 1355.  This isn't a heavy burden.  *Id.*  If a defendant

meets this burden of production, the presumption nonetheless "remains a factor for consideration

by the district court in determining whether to release or detain."  *Id.*  But "the burden of

persuasion regarding risk-of-flight and danger to the community always remains with the

government."  *Id.* at 1354–55.

Mr. Holguin-Valdez has presented some evidence to rebut the presumption.  He's

adduced a Department of Justice report about pretrial release and rates of misconduct.  Def. Ex.

A.  He's submitted a letter from his daughter, Def. Ex. B, and letters from his daughter's

principal and teachers, Def. Ex. C.  The Pretrial Services Report also describes Mr. Holguin-

Valdez's connections to the Kansas City community.  Doc. 12 at 2.

The court thus turns to the government's burden of persuasion.  This burden depends on

the theory of pretrial detention advanced by the government.  If the government argues that a

defendant poses a danger to others or to the community, the government must prove that danger

by clear and convincing evidence.  *Cisneros*, 328 F.3d at 616.  If the government argues that a

defendant poses a risk of flight, it must prove that risk by a preponderance of the evidence.  *Id.*

Here, the government has advanced both theories.  The court takes up each theory, below, starting with dangerousness.  And, throughout the analysis, it keeps the § 3142(e)(3)(A) presumption and the government's ultimate burden firmly in mind.

### B.     Dangerousness

The government asserts that Mr. Holguin-Valdez represents a risk to community safety because he has engaged in drug-trafficking activities and so, there "is a substantial risk that defendant will continue to engage in drug trafficking activities prior to trial."  Doc. 11 at 10.  This argument centers on the fourth § 3142(g) factor:  the danger posed by Mr. Holguin-Valdez's release to the community.  The magistrate judge found that this factor did not favor detention.  Doc. 10 at 8.  The court agrees.

The government carefully has outlined the evidence it claims it possesses and would present against Mr. Holguin-Valdez at a trial.  Highly summarized, the government asserts that its evidence shows defendant engaged in four controlled sales of methamphetamine between mid-February 2024 and early June of that same year.  Doc. 11 at 4–5.  The government also asserts its evidence would show that Mr. Holguin-Valdez, in early August of 2024, called an unidentified FBI confidential source to announce that defendant expected to receive a load of methamphetamine the next day.  *Id.* at 5.  The government reports that the FBI used this information to arrange a traffic stop of defendant's vehicle.  *Id.* at 5–6.  A search of his vehicle located more than 2.2 kilograms of 98% pure methamphetamine, the government asserts.  *Id.* at 6.

But the circumstances of the offense don't support the conclusion that Mr. Holguin Valdez is dangerous because he'll continue trafficking drugs.  The United States didn't arrest Mr. Holguin-Valdez for this alleged activity until late November 2025—about 15 months later.  And the government never identifies any evidence suggesting that defendant engaged in drug

trafficking during any of those 15 months.  This absence belies the inference that he is likely to return to drug trafficking if he's released, pretrial.  On the alleged facts of this case, the government's theory is nothing but unsupported rhetoric begging for an inference that no facts— at least not now—can support.

The court isn't naïve.  As the magistrate judge noted, judges in our court have reasoned that the "'distribution of methamphetamine, combined with the possession of firearms, represents activities that are inherently dangerous to the community, as well as the people involved in this sort of illegal activity.'"  Doc. 10 at 6 n.9 (quoting *United States v. Slayden*, No. 17-10154-JWB, 2018 WL 2388908, at *2 (D. Kan. May 25, 2018)).  Many drug traffickers possess dangerous weapons.  And so, it stands to reason, drug trafficking often threatens the public safety.  But the key words in this excerpt from *Slayden* are "combined with possession of firearms[.]"  The government never even claims that Mr. Holguin-Valdez possessed a firearm (or other weaponry) during any of the controlled sales it attributes to him.  Nor does it claim that his vehicle included a weapon when Mr. Holguin-Valdez allegedly was stopped with 2.2 kilograms of meth in his car.

To be sure, the court's experience recognizes that it's likely someone, somewhere along the distribution chain possessed a firearm to protect this contraband.  But nothing—literally nothing—suggests that Mr. Holguin-Valdez did so.  The government doesn't assert that about any of the controlled sales.  It doesn't assert a gun was present when a distribution quantity of meth allegedly was found in the defendant's car.  So, the government comes up empty on both prongs of its "return to drug trafficking + drug traffickers carry guns = a threat to public safety" equation—as they would have the court apply it to Mr. Holguin-Valdez.  There's literally

8

nothing to support the assertion that the defendant likely would return to drug trafficking. And there's even less to support the proposition that this defendant ever possessed a firearm.

Again, when methamphetamine gets trafficked, there's likely an incalculable and indirect threat to some member of the public somewhere. But on the facts asserted here, this theoretical risk is too amorphous to sustain the government's burden—one requiring clear and convincing evidence—against Mr. Holguin-Valdez. The court thus rejects the government's danger-to-the-public argument for detention.

### C.    Risk of Flight

This leaves the other alternative permitting pretrial detention: Does Mr. Holguin-Valdez present a risk of flight and can pretrial conditions reasonably assure his appearance as this prosecution requires? Section 3142(g) establishes four sets of factors courts must evaluate when they answer this question. The court now assesses all four of those factors.

#### 1.    Nature and Circumstances of the Offense

The first factor requires the court to consider "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance[.]" 18 U.S.C. § 3142(g)(1). As already stated, the charges against Mr. Holguin-Valdez fall into the controlled-substances category. And, as already discussed, these charges create a presumption of detention. *See* 18 U.S.C. § 3142(e)(3)(A); *see above* § III.A. As did the magistrate judge, the court finds that this factor favors detention.

#### 2.    Weight of the Evidence

The second factor directs the court to evaluate "the weight of the evidence against the person" charged. 18 U.S.C. § 3142(g)(2). This factor matters "because strong evidence of guilt frequently creates an incentive to flee." *United States v. Toirov*, No. 25-2074, 2025 WL 2406099, at *1 (10th Cir. Aug. 20, 2025) (Bacharach, J., dissenting). The magistrate judge

9

concluded that this factor favors detention.  The court agrees, with a slight caveat; this factor *strongly* favors detention here.

At the hearing, Mr. Holguin-Valdez didn't dispute (for purposes of that hearing only) the government's version of events—*i.e.* the four controlled buys of methamphetamine.  The government asserts that the four sales to a confidential informant include recordings of each transaction on either an audio or audio-video device.  Doc. 11 at 4–5.  For the fifth, which led to the traffic stop that turned up distribution-quantity methamphetamine in Mr. Holguin-Valdez's car, the evidence includes lab tests of the methamphetamine.  *Id.* at 5.  What's more, after the traffic stop, law enforcement interviewed Mr. Holguin-Valdez following a *Miranda* waiver.  *Id.* at 6.  He "admitted [to] engaging in methamphetamine transactions and indicated he obtained the drugs from Mexican sources."  *Id.*

Of course, evaluating the weight of the evidence at this early stage comes with some intrinsic challenges.  Mr. Holguin-Valdez learned the government had charged him about 30 days ago.  He's had limited time or opportunity to evaluate the government's assertions or explore the reliability of the underlying material.  So, the court, at this stage, necessarily acts on the government's description of its evidence.  But the government's recitation does recite possession of corroborating evidence—*i.e.* recordings of the four buys and the lab-test methamphetamine from the traffic stop.

So, the prosecution has, by far, the better end of this factor.  The weight of this evidence at this stage is strong.  It strongly favors detention.

### 3.    History and Characteristics

Section 3142(g)'s third factor directs the court to evaluate "the history and characteristics of the person" charged.  18 U.S.C. § 3142(g)(3).  Unlike its statutory predecessors, it also provides several subcategories of considerations informing the court's evaluation.  Part (A) lists

the following considerations:  "the person's character, physical and mental condition, family ties, employment, financial resource, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]"  *Id.* § 3142(g)(3)(A).  Part (B) provides a second cohort of considerations.  They direct the court to consider "whether, at the time of the current offense or arrest, the person [charged] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."  *Id.* § 3142(g)(3)(B).

The court begins with Part (B).  The factors recited there are easier to apply.  Nothing suggests that Mr. Holguin-Valdez occupied any of the various stages of a criminal case when he was arrested here.  The considerations in (B) thus favor release.

But Part (A) is more mixed.  Some of its subfactors favor release.  Some favor detention.  And one is neutral.  The following paragraphs explain these conclusions in detail.

***Favoring release.***  Mr. Holguin-Valdez has resided in his current community—one located in the same Kansas county where the grand jury indicted him—for a sizable portion of the last 23 years.[1]  Likewise, his wife and three children reside with him in a residence where he's lived—again, for the most part—for the last five years.  Yet there's a wrinkle in this fact, for the defendant's wife first told the Pretrial Services Officer that he had resided in this residence "off and on" during the past four months because they were "frequently arguing."  Doc. 12 at 2.  But then his wife "clarified" that the defendant lived in the home with their three children and a daughter-in-law, and he could return there if released.  *Id.*  Mr. Holguin-Valdez plainly has

---

[1]    The court's not able to discern how many of those 23 years he actually resided in this community in Kansas.  There's evidence that the federal government deported him sometime during those two-plus decades and then, at some point, he returned here.  But when he returned is an unknown.

community ties, as the letters provided by his children's educators established.  *See* Def. Ex. B;
Def. Ex. C.

Mr. Holguin-Valdez has some criminal history, but it's mostly dated—*i.e.*, 2007 and
2013 state-court convictions and a 2016 federal-court conviction for illegal entry.  *See* Doc. 12 at
4.  Finally, with one exception that's not altogether clear, there's no history associated with this
criminal history suggesting he won't appear for hearings, if released.  Last, there's the
employment factor.  Defendant asserts he's a self-employed painter and has so worked for the
past 14 years.  *Id.* at 2.  Nothing contradicts this assertion, though self-employment—at least on
the record presented here—seems less verifiable and less verifiably stable than employment by
others.  In short, all these subcategories favor release even though some come with complicating
nuances.

***Disfavoring release.***  Other listed subcategories cut the other way.  He's given false
names to law enforcement multiple times.  And it's undisputed that Mr. Holguin-Valdez was a
cocaine user when arrested.  He told the Pretrial Services Officer so, reporting he'd used cocaine
as recently as November 8, 2025—just days before his arrest.  *See* Doc. 12 at 1, 3.  And if the
actual evidence matches the government's report of evidence collected by officers, Mr. Holguin-
Valdez possessed cocaine while driving others, including children, in his car.  Mr. Holguin-
Valdez tried, unsuccessfully, to discard that cocaine by tossing it away when it seems he thought
the officers wouldn't notice.

Also, some of Mr. Holguin-Valdez's past conduct strongly weighs against release.
Indeed, this conduct is the most recent iteration of his past conduct.  Recall that when the two
Deputy Marshals came to arrest the defendant, he fled from them.  And it wasn't a momentary
thing.  The two federal law enforcement officials chased him for 50 yards, and his attempt to flee

didn't stop until one of them took him down to the ground. Even then, Mr. Holguin-Valdez didn't submit completely to the officer's legal authority. Mr. Dent testified that they had to pry defendant's arm out from underneath him to complete the handcuffing process.

In sum, some factors disfavor release. Indeed, some of them strongly disfavor it. *See United States v. Smith*, No. 5:20-CR-2-TBR, 2020 WL 3066623, at *3 (W.D. Ky. June 9, 2020) (finding defendant's flight from police officers was a "substantial reason to believe that Defendant will not appear at trial if released").

***Neutral factors.*** One factor listed in part (B) weighs in as a neutral: defendant's physical and mental condition. The record doesn't contain any information suggesting the defendant's physical or mental condition is pro- or anti- release.

***Conclusion about subpart (A)'s factors.*** The court finds that the factors identified by § 3142(g)(3)(A) are something of a mixed set. Some of the considerations chosen by Congress to drive this factor's evaluation favor release. Others cut just the opposite direction. On balance, the court finds that this factor favors release, but not by much. True, more of the considerations listed in § 3142(g)(3) favor release than disfavor it. But one of the considerations in the disfavor-release column provides the single most telling data point about Mr. Holguin-Valdez's propensity for flight. The court refers, of course, to Mr. Holguin-Valdez's unfortunate decision to take flight from two prominently marked law enforcement officers. In a nutshell, the court needn't rely on purely circumstantial evidence to decide whether Mr. Holguin-Valdez represents a risk of flight. He's already demonstrated that he does. His conduct also manifested a willingness to disobey direct commands from two officers that he submit to arrest. On the facts

available here, Mr. Holguin-Valdez's decision to flee goes to the core of the larger decision. The intent Mr. Holguin-Valdez displayed on that occasion is extremely concerning.[2]

In sum, the court finds that the factors expressed in § 3142(g), subparts (A) and (B), favor release—but just barely so. On this front, the court, applying de novo review and having had the chance to hear testimony by the arresting Deputy Marshal, disagrees with the magistrate judge's conclusion. The magistrate judge found that the defendant's history and characteristics "weigh[ed] significantly against his detention." Doc. 10 at 8. Respectfully, the court disagrees. This factor favors pretrial release, but only by a small margin.[3]

---

[2]     At the review hearing, Mr. Holguin-Valdez's counsel argued that there's a difference between being frightened "in the moment" and fleeing vis-à-vis deciding not to appear for court. Perhaps there's something to be said for this point, but it's not nearly enough to justify flight that ends only when restraint is forcibly applied. Counsel also argued that the defendant's flight happened in "this political climate" when defendant "had no idea who was coming" for him. The court declines comment on "this political climate" or any other. But the "no idea" argument is just factually wrong. Each Deputy Marshal wore a vest identifying him as a "U.S. Marshal" and "Police." And Mr. Dent testified that in his judgment, Mr. Holguin-Valdez recognized him as an officer of the law.

[3]     The court rejects two of the parties' arguments (one from each side). *First*, the court isn't persuaded by the government's use of evidence about Mr. Holguin-Valdez's immigration status. Mr. Holguin-Valdez is a citizen of Mexico and the government has deported him before. Doc. 11 at 7–8. And, currently, Immigrations and Customs Enforcement has a detainer in place. *Id.* at 7. The government asserts that Mr. Holguin-Valdez "has incentive and access [to] 'self deport' and avoid a lengthy prison sentence, which will likely be immediately followed by formal deportation from the United States." *Id.* at 8. But, in the court's experience, ordering a defendant subject to an immigration detainer released pretrial is more likely to lead to the *government* deporting the defendant than the defendant "self deporting." *See* Status Conference, *United States v. Ramirez-Lopez*, No. 25-20046-DDC (D. Kan. Oct. 14, 2025), Doc. 37. Yet the court can't consider this evidence. Our Circuit has held that "a risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) (alteration in original) (quoting 18 U.S.C. § 3142(f)(2)(A)). Though the government mentions the ICE detainer, the government knows the court can't consider it to show risk of flight, and argues that the court should consider Mr. Holguin-Valdez's "status as a foreign national[.]" Doc. 11 at 8. The court declines to apply so broad a brush and rejects the government's concern that Mr. Holguin-Valdez will self deport. He has a home and a family here.

*Second*, Mr. Holguin-Valdez proffers a Department of Justice Special Report finding that only 2% of undocumented, non-citizen defendants violate their conditions of supervised release. Def. Ex. A. The problem with this survey: it presupposes the answer to the very question presented here. That is, the data comes from defendants released pretrial—*i.e.*, defendants charged with crimes without a presumption of detention, or defendants with more favorable history and characteristics. To the extent

### 4.     Nature and Seriousness of Danger to Others and Community

The fourth set of factors identified in § 3142(g) direct the court to evaluate "the nature and seriousness of the danger to any person or the community that would be posed by" defendant's release. § 3142(g)(4).  The court already has discussed these considerations.  They favor release.

### 5.     Risk of Flight Summary

In sum, as explained above, two of the § 3142(g) factors (nature and circumstances of offense charged, weight of evidence) strongly favor detention.  A third factor (defendant's history and characteristics) slightly favors release.  The final factor (nature and seriousness of danger posed by defendant's release) favors release.  While two factors align on each side of the balance, this doesn't mean that release wins the day, given the relative weight of each factor: two factors, one of which carries slight weight, balanced against two strong factors.  And then there's the presumption of detention for an offense like this one.  On balance, the court finds that § 3142(g)'s factors favor detention more than they favor release and the government has shouldered its burden to show risk of flight by a preponderance of the evidence.  Key to the court's finding on this front is what Mr. Holguin-Valdez's conduct at arrest revealed about him. He's fled from law enforcement officers once and so, there's a sufficient risk that he might do so again and thus fail to appear in court as required.

### 6.     Conditions of Release

---

Mr. Holguin-Valdez is offering this report to show that undocumented, non-citizen defendants are less likely to violate their pretrial release conditions than citizen defendants, that point is justified by this survey of this cohort of defendants.  But this general point about the law-abiding nature of non-citizens is of little use in the fact-intensive inquiry here, one where the court must decide if the defendant belongs in that group of defendants deserving pretrial release.

Even when the § 3142(g) factors favor detention, the caselaw requires the court to decide whether any condition or combination of conditions will reasonably assure the defendant's appearance as required. *See United States v. Gerkin*, 570 F. App'x 819, 822 (10th Cir. 2014) ("The existence of a serious flight risk . . . does not alone justify detention."); *see also* 18 U.S.C. § 3142(e)(1). The magistrate judge, on ordering release, specified several conditions. *See* Doc. 9. Most pertinent to the risk the court perceives about the defendant's risk of flight are a curfew and location monitoring. *Id.* at 2–3. While these measures would mitigate some of the risk, the court is unpersuaded that the conditions reasonably will assure defendant's appearance.

To start with the obvious, location monitoring can identify when a released defendant goes out of bounds and thus suggests flight may be in process. But the court's experience convinces it that monitoring doesn't nullify the risk sufficiently to offset the risk here. For one thing, monitoring can't furnish a panacea to offset flight risk in all cases. If it did, it would nearly nullify the risk-of-flight factor outlined here. For another, monitoring devices work only when they're worn. The court has experienced defendants cutting off their monitoring device on the eve of trial, or even on the morning of a guilty plea coming with likely detention. Monitoring devices provide sufficient deterrent and information to assure *some* defendant's appearance reasonably. But they don't provide a sufficient condition to negate the risk for all defendants. Based on Mr. Holguin-Valdez's conduct at arrest and the other factors discussed in this Order, he has placed himself in the latter category. Neither curfew nor monitoring nor any other condition reasonably will assure Mr. Holguin-Valdez's appearance as required.

## IV.    Conclusion

Reasonable minds can disagree about pretrial detention decisions. *See, e.g.*, *United States v. Garcia*, No. 25-1370, 2025 WL 3521614, at *4 (10th Cir. Dec. 5, 2025) (Phillips, J., dissenting); *Toirov*, 2025 WL 2406099, at *1 (Bacharach, J., dissenting). The court, in its

discretion, concludes that the government has shown by a preponderance of the evidence that no condition or combination of conditions reasonably will assure that the appearance of Mr. Holguin-Valdez.  It thus orders Mr. Holguin-Valdez detained under 18 U.S.C. § 3142(e).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the government's Motion to Review (Doc. 11) is granted.

**IT IS SO ORDERED.**

**Dated this 19th day of December, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
